*In re* MICHAEL FIELDS, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* MICHAEL FIELDS, Respondent-Appellant.)

First District (5th Division)    No. 63187

Opinion filed March 11, 1977.

James J. Doherty, Public Defender, of Chicago (John M. Kalnins, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Myra J. Brown, Jerome A. Saxon, and Joel M. Goldstein, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Respondent appeals from an order revoking his probation and committing him to the Department of Corrections. He contends that the court: (1) lacked jurisdiction to commit him, (2) failed to establish that there was a factual basis for his guilty plea, and (3) abused its discretion in committing him to the Department of Corrections.

On January 15, 1975, a petition for an adjudication of wardship was filed alleging that respondent "[O]n or about 8 January 1975 knwoingly [*sic*] obtained unautorized [*sic*] control over property, 1-ladies wristwatch and 250 pair shoe laces of the value of less $150.00 the property of Leo W. Jones, with the intent to deprive said Leo W. Jones permanently of the use and benefit of said property, in violation of Chapter 38 Section, 16—1(a) Illinois Revised Statutes." At the initial hearing held on January 16, 1975, it was discovered that respondent had been arrested at least four times in the previous year. The hearing was continued to determine if respondent was on probation. On January 20, 1975, the court established that on December 20, 1974, respondent had been adjudged delinquent on a charge of theft and placed on probation. Realizing that the instant action had been erroneously filed as an *original* petition the court suggested it be refiled as a *supplemental* petition. Thereafter, respondent's probation officer was asked by the court if he could "work" with respondent. He responded that he was assigned to the case on December 20, 1974, and that:

"If I go with just what I see on paper, I'd have to ask for a commitment. I haven't really been able to work with him."

The court then discussed with the probation officer and respondent's mother the possibility of respondent residing with two aunts in Maywood. The court directed that this possibility be explored further and ordered respondent held in custody pending a clinical examination.

On February 3, 1975, the State orally sought leave to amend its petition by striking the words "obtained unlawful control over property." The report of proceedings does not reflect what was inserted in place of the deletion. Thereafter, respondent, through his counsel, entered an admission to the amended petition. The court again reviewed the dispositional alternatives. The clinical investigation recommended a "residential treatment center." However, the respondent's probation

officer felt that this was impractical because of respondent's age. After the court suggested referral to U.D.I.S.,[1] the proceedings were continued in order to determine if U.D.I.S. would accept respondent.

On March 31, 1975, after the respondent's probation officer reported that U.D.I.S. was unable to accept respondent the court reviewed respondent's situation and ordered that he be held in custody pending a supplemental social investigation to update the original investigation which was incident to the initial probation. The court granted the State's oral motion to amend the original petition to a supplemental petition.

At the dispositional hearing held on April 14, 1975, the following colloquy occurred:

> "THE COURT: For disposition and UDIS. UDIS won't take him?
>
> PROBATION OFFICER: That was in February, Judge.
>
> THE COURT: There is no place, is that right?
>
> PROBATION OFFICER: Right now.
>
> THE COURT: Well, I have read the social investigation report, I have seen Michael's history. Based on the social investigation report and my own contacts with Michael over an extended period of time, I order Michael committed to the Department of Corrections."

The probation officer then stated for the record his "attempts at working with Michael." He explained that respondent had been living with two aunts in Maywood and had "no problems." However, against his advice, respondent had returned to his old neighborhood and "got into trouble again." He noted that U.D.I.S. had refused to accept respondent because of his previous record.

OPINION

■■■ Respondent first contends that the court lacked jurisdiction to commit him because he had not previously been adjudged a ward of the court as required by section 4—8 of the Juvenile Court Act. (Ill. Rev. Stat. 1975, ch. 37, pars. 704—8.) We agree that an explicit adjudication of wardship is necessary before a court may enter a dispositional order (In re Barr (1976), 37 Ill. App. 3d 10, 344 N.E.2d 517), but find that an adjudication was made in this case. The record indicates that this petition was amended as a supplemental petition, pursuant to the oral motion made by the State on March 31, 1975. Consequently, the adjudication of wardship would have occurred at the hearing on the original petition in December 1974. Because respondent failed to submit a report of these

---

[1] Uniform Delinquency Intervention Service—nominally under the control of the Department of Corrections, this program diverts minors with prior history of delinquency from commitment to the Department of Corrections to an extensive program of daily non-institutional supervision and simple goal orientation.

proceedings, a presumption arises that wardship was properly adjudicated. (*In re Shannon* (1977), 45 Ill. App. 3d 876, 360 N.E.2d 433.) Nonetheless, respondent argues that the petition was not amended to supplemental status until after he entered his admission. However, because the true nature of the petition was previously brought to his attention on January 20, 1975, we fail to see any prejudice to him in not formally amending the petition until after he entered his admission.

Respondent next contends that the court erred when it accepted his admission based upon facts which he argues do not constitute a crime. His contention is based on the following colloquy which occurred after the admission was made.

"THE COURT: Michael, how old are you?

THE RESPONDENT: 15.

THE COURT: Do you read and write?

THE RESPONDENT: Yes, sir.

THE COURT: You have been charged with having stolen some property which you knew was stolen; do you know about that?

THE RESPONDENT: No.

PUBLIC DEFENDER: Did I just talk to you about the ten pairs?

THE RESPONDENT: Yes.

PUBLIC DEFENDER: Do you remember?

THE RESPONDENT: Yes.

THE COURT: You have the right to a trial and you have the right to have witnesses brought in to testify against you, and you have the right to bring in anyone who could testify on your behalf, and you have the right to testify on your own behalf or to remain silent at your trial. You understand if you admit these charges I could place you on probation or commit you to the Department of Corrections. Is that clear?

THE RESPONDENT: Yes, sir.

THE COURT: Knowing those things, you still want to admit you had those things in your possession?

THE RESPONDENT: Yes, sir.

PUBLIC DEFENDER: He bought ten pairs of shoeloaces. Well, 250 and he bought ten of them.

THE COURT: And you knew they were stolen?

THE RESPONDENT: Yes, after I bought them.

PUBLIC DEFENDER: And you kept them anyway.

THE RESPONDENT: Yes.

THE COURT: And I will accept the admission."

Respondent argues that his remarks indicate he had no knowledge that the shoelaces had been stolen until after he obtained them. Because the

court is required to determine if there is a factual basis for a guilty plea (Ill. Rev. Stat. 1975, ch. 110A, par. 402(c)), he contends that his commitment should be set aside. See *People v. Rollins* (1973), 9 Ill. App. 3d 1011, 293 N.E.2d 733.

∎∎ In *People v. Beard* (1974), 59 Ill. 2d 220, 226, 227, 319 N.E.2d 745, 748, *cert. denied,* 421 U.S. 992, 44 L. Ed. 2d 483, 95 S. Ct. 1999, our Supreme Court held "that Rule 402 is not applicable to probation revocation proceedings." Although *Beard* was a criminal proceeding the rule is applicable here. Just as in *Beard,* the instant proceedings were brought to terminate respondent's probation.

∎∎∎ Moreover, we think the inquiry here met the standards set forth in Rule 402. In a criminal case a factual basis for a guilty plea is shown when there is reasonable grounds to conclude that defendant, with the requisite mental state, committed acts constituting the offense to which he pleads guilty, and it is not necessary that this be shown beyond a reasonable doubt or even by a preponderance of the evidence. (*People v. Maynard* (1974), 24 Ill. App. 3d 468, 321 N.E.2d 378.) Section 16—1(d)(1) of the Criminal Code of 1961 makes it illegal to obtain control over property one knows is stolen or "under such circumstances as would reasonably induce him to believe the property was stolen * * *." (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(d)(1).) In his remarks to the court respondent admitted that he received 250 pairs of shoelaces, but only paid for 10. From this fact the court could easily conclude that respondent should have known that the items had been stolen when he "bought" them, but only later gained actual knowledge that they had been stolen.

Respondent also contends that the court erred when it found him delinquent based upon a petition which failed to allege a crime. He argues that the report of proceedings for February 3, 1975, shows that the State in amending its petition struck the words "obtained unlawful control over property" without substituting others. He concludes that the petition failed to charge a crime.

∎∎ Although the February 3, 1975, report of proceedings does not indicate the substitution, the State here without objection by defendant, submitted a supplemental record containing a copy of the January 15, 1975, petition which has the words "received stolen property" written in the margin. We, therefore, conclude that the petition was properly amended and charges an offense. See *People v. Bradley* (1971), 3 Ill. App. 3d 101, 278 N.E.2d 243.

Respondent further contends that he was denied due process because the court failed to fully consider other dispositional alternatives before committing him to the Department of Corrections. He asserts that commitment is a "last resort" and claims that there were other alternatives which the court failed to consider.

We disagree. When respondent was brought before the court on January 16, 1975, he had an extensive arrest record and was already on probation. At various times over the next three months the court ordered a clinical examination, a supplemental social investigation, and proposed referral to U.D.I.S. The court also sought recommendations from respondent's mother and his probation officer. Based upon these and its contacts with respondent over a three-month period, the court found that the best alternative was commitment.

As respondent's probation officer confirmed on April 14, 1975, there was no place else to send him. Respondent obviously could not return home. Probation had proved an unsatisfactory solution to curbing his unlawful conduct. Although living with relatives in Maywood seemed to keep him out of trouble, he apparently refused to remain there, having returned to his home against the advice of his probation officer. Referral to a "residential treatment center" was impractical because of his age and U.D.I.S. refused to accept him because of his extensive record. In our opinion the court explored all dispositional alternatives thoroughly before committing respondent to the Department of Corrections.

■■ Finally, respondent complains that the court failed to adequately state its reasons for committing him as required by section 5—1(5) of the Juvenile Court Act. (Ill. Rev. Stat. 1975, ch. 37, par. 705—1(5).) We note, however, that no particular type of statement is required. The court is merely required to set forth "the basis for selecting the particular disposition." Here, the court stated it based its decision on the social investigation and its own contacts with respondent. Thereafter, the court specifically requested respondent's probation officer to "state for the record" his attempts "at working with" respondent, which he did. We believe this statement was sufficient to comply with the dictates of section 5—1(5).

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.