*In re* L.E.J., a Minor—(The People of the State of Illinois, Petitioner-Appellee, *v.* L.E.J., Respondent-Appellant).

Fourth District   No. 4—82—0735

Opinion filed June 29, 1983.

Daniel D. Yuhas and Jonathan Haile, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert J. Biderman and Howard L. Hood, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

The minor was adjudicated delinquent by the circuit court of Champaign County and committed to the Department of Corrections. He appeals, contending (1) that the court lacked jurisdiction, and (2) that he should have been given an opportunity to withdraw his admissions which formed the basis of adjudication.

No questions have been raised concerning the guilt of the minor nor reasonable doubt of it. Therefore, an extended recitation of the facts is unnecessary. Suffice it to say, he and a compatriot approached an elderly man who was walking with his dog on a city street in Urbana in the late evening hours of October 8, 1982. A weapon was brandished and money demanded of the man, who told them that he did not possess any upon his person. He was then struck upon the head with the weapon and his attackers walked away. It appears that he was not seriously injured. Both the minor and his companion were shortly afterwards apprehended by the police as a result of an unrelated incident which occurred at Mercy Hospital. Their stories conflicted as to which one possessed and used the weapon.

A delinquency petition was then filed alleging that the minor had committed the offenses of attempt (armed robbery) in violation of sections 8—4(a) and 18—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, pars. 8—4(a), 18—2(a)). Additional charges of aggravated

battery and attempt (robbery) were later dismissed by the State. At the adjudicatory hearing the minor stipulated and admitted to the charge of attempt (armed robbery) and was declared delinquent. At the dispositional hearing he was committed to the Department of Corrections.

The minor's principal contention on appeal is that the trial court lacked jurisdiction. We believe that he misapprehends the nature of the jurisdiction of a circuit court in a juvenile proceeding.

We pause briefly to comment on the usage of the term "juvenile court" in referring to a circuit court sitting in a juvenile case. It is not a separate court. The Constitution of 1970 (Ill. Const. 1970, art. VI, sec. 1) provides only for "circuit courts." This was likewise true of the Constitution of 1870, as amended in 1962. (Ill. Const. 1870, art. VI (1962), sec. 1.) Prior to that time the Constitution of 1870 provided for a variety of courts, including "one supreme court, circuit courts, county courts, justices of the peace, police magistrates, and such courts as may be created by law in and for cities and incorporated towns." (Ill. Const. 1870, art. VI, sec. 1.) Under the predecessor statute of the Juvenile Court Act (Ill. Rev. Stat. 1981, ch. 37, par. 701—1 *et seq.*), the Family Court Act (Ill. Rev. Stat. 1951, ch. 23, par. 190 *et seq.*), circuit and county courts were given "original jurisdiction in all cases coming within the terms of" that act. (Ill. Rev. Stat. 1951, ch. 23, par. 191.) As a matter of practice, except in Cook County, most juvenile cases were heard in the county courts and a habit of usage grew up of calling these hearings "juvenile court." Although the appellation is useful in identifying the nature of the proceeding, there is no such tribunal as a "juvenile court" under either the present or the predecessor statute. Even the supreme court, by momentary lapse, referred to the Family Court Act (Ill. Rev. Stat. 1955, ch. 23, par. 192b) as the "Juvenile Court Act." *People ex rel. Houghland v. Leonard* (1953), 415 Ill. 135, 112 N.E.2d 697.

Back to the case at bar: the minor's jurisdictional argument stems from the admitted failure of the State to notify his natural father and an aunt of the adjudicatory hearing. The petition alleged as respondents in addition to the minor:

"MOTHER: Eddie Mae Hicks, L/K/A - 307 W. Clark,
Urbana or 1201 N. Busey, Urbana, IL
GUARDIAN: Department of Children and Family Services,
3402 N. Mattis, Champaign, IL
FATHER: Leroy James, 608 N. Randolph, Champaign, IL
or Unit A, Tudor Court, Dobbins Down,
Champaign, IL."

The record does not disclose service or notification to any of these. The mother appeared at the adjudicatory hearing, although there is nothing in the record to indicate how she learned of it. The Department of Children and Family Services (Department) appeared throughout. It apparently became aware of the minor's current problems by reason of having been awarded guardianship of the minor as a result of a prior neglect proceeding in 1979. The father never appeared. In the record there is an affidavit for service by publication, signed by the State's Attorney, and setting up the last known addresses of the father as being the same as set forth in the petition recited above. Insofar as the record shows, there was no publication. An aunt, Ms. Patterson, appeared at the dispositional hearing, although she was not named as a respondent. A probation officer's report indicates that the Department had placed the minor with her in foster care about four months prior to the instant offense and that he was residing with her at the time. She visited with him once while he was in detention from the date of the offense until the adjudicatory hearing.

While we cannot condone the cavalier attitude of the State in failing to give notice to any respondent mother, guardian, or father, we are likewise disturbed by the failure of defense counsel to enter any objection thereto. Nevertheless, under the circumstances here present, we do not find any impairment of the circuit court's jurisdiction, although we are apprehensive that the bench and bar are reading *In re J.W.* (1981), 87 Ill. 2d 56, 429 N.E.2d 501, and *In re S.W.C.* (1982), 110 Ill. App. 3d 695, 442 N.E.2d 961, too expansively.

The jurisdiction of the circuit court is no longer dependent upon statutes and derives from the constitution itself. (*In re Estate of Mears* (1982), 110 Ill. App. 3d 1133, 443 N.E.2d 289.) In the area of juvenile proceedings this distinction may be observed in the difference in language between the Juvenile Court Act and its predecessor, the Family Court Act. The former speaks of "jurisdictional facts" (Ill. Rev. Stat. 1981, ch. 37, par. 702—1) while the latter specifically conferred original jurisdiction, as set forth above. Under the Constitution of 1970 the circuit court has original jurisdiction "of all justiciable matters." (Ill. Const. 1970, art. VI, sec. 9.) While that term is not easily defined, in the juvenile context its apparent meaning is an offense for which the juvenile may be accountable. This is what has traditionally been designated as subject matter jurisdiction. The existence of subject matter jurisdiction was expressly acknowledged in *J.W.* where the supreme court said, "The court, then, had jurisdiction of the subject matter and of the persons of the minor and his mother, but not of

the person of the father." 87 Ill. 2d 56, 59, 429 N.E.2d 501, 503.

■■ Jurisdiction of persons under the Juvenile Court Act is regulated by that statute and is one of the conditions precedent to the exercise of subject matter jurisdiction. (*Mears.*) To state the matter another way, subject matter jurisdiction is the power of the court to adjudicate; personal jurisdiction is the ability to exercise that power as to particular individuals. Lack of personal jurisdiction does not deprive the court of subject matter jurisdiction; only the ability to exercise its power upon those who have not been brought into court by summons or otherwise.

Thus, in the seminal case of *In re Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428, where the juvenile was taken into custody without notice to his parents; where a petition for delinquency was filed and not served on either the juvenile or his parents and made no reference to the factual basis for its filing, and where both the juvenile and his parents were deprived of fundamental rights, the Supreme Court held that there was a due process violation, but nowhere did it hold that the Arizona court lacked jurisdiction. In fact, it reversed and remanded. Lack of personal jurisdiction may yield a voidable order, but such an order is not void for lack of subject matter jurisdiction.

We feel that the same rationale underlies the decision of our supreme court in *J.W.* There was no service of any kind upon the father, yet there was no doubt in the court's mind that subject matter jurisdiction existed.

This is not to say that subject matter jurisdiction alone allows the court to proceed to judgment. *Gault* mandates quite the contrary. What is meant is that lack of service over some of the respondents will not deprive the court of jurisdiction; in some cases such a lack will be meaningless (*e.g., J.W.*); in others it may require reversal of the order, not for lack of jurisdiction, but for a statutory or constitutional violation. In this connection we believe that *In re T.B.* (1978), 65 Ill. App. 3d 903, 382 N.E.2d 1292, may be questioned for its statement that failure to obtain proper notice on the juvenile's mother deprived the court of jurisdiction and made its orders void. The authority cited was decided under the Family Court Act and the Constitution of 1870. The differences in those documents from the Juvenile Court Act and the Constitution of 1970 have already been noted. Furthermore, if the order were void for lack of jurisdiction, outright reversal would have been proper; however, the court elected to reverse and remand on the basis of *Gault.*

■■ Turning at last to the facts of the instant case, we find noth-

ing in this record which would deprive the court of jurisdiction. The petition contained the names and last known residences of his parents and the name and residence of his legal guardian. (Ill. Rev. Stat. 1981, ch. 37, pars. 704—1(2)(c), (d).) Inexplicably no attempt at notification, publication, or service was made upon any of the named respondents, but, as previously indicated, the mother appeared at the adjudicatory hearing and the Department, as legal guardian, appeared throughout. There is no showing in the record that the father had any significant relationship with the minor other than a placement by the Department of the minor in foster care with the father. This placement terminated about 17 months prior to the instant offense and thereafter the father left the Champaign area and was believed to be somewhere in the State of Colorado. He fits precisely in the mold of *J. W.* and was not an indispensable party.

The same may be said of the aunt, Ms. Patterson. The petition must state "the name and residence of his legal guardian *or* the person or persons having custody or control of the minor." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 37, par. 704—1(2)(d).) The Department was named as guardian; while the aunt had custody, it was foster care under the direction of the Department. She also was not an indispensable party, and as previously noted, voluntarily appeared at the dispositional hearing.

In summary, there are no deficiencies in the notice requirements which render the court's orders voidable, nor have there been any due process violations.

The minor's final contention is that the court should have given him an opportunity to withdraw his stipulation and admission of guilt under Supreme Court Rule 402(d) (87 Ill. 2d R. 402(d)) and cites for this proposition *People v. Collins* (1981), 100 Ill. App. 3d 611, 426 N.E.2d 1274. The supreme court has specifically held that the requirements of Rule 402 do not apply in juvenile cases. *In re Beasley* (1977), 66 Ill. 2d 385, 362 N.E.2d 1024.

We have examined the trial court's admonitions with care and find that they fully meet constitutional muster.

The orders of the circuit court of Champaign County are affirmed.

Affirmed.

MILLS and GREEN, JJ., concur.