NO. 4-07-0098          Filed 10/31/08

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: NATHAN A.C., a Minor, | ) | Appeal from |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Circuit Court of |
|        Petitioner-Appellee, | ) | Champaign County |
|        v. | ) | No. 06JD89 |
| NATHAN A.C., | ) | |
|        Respondent-Appellant. | ) | Honorable |
| | ) | Harry E. Clem, |
| | ) | Judge Presiding. |

JUSTICE MYERSCOUGH delivered the opinion of the court:

In November 2006, the trial court revoked the probation of respondent, Nathan A.C. (born March 14, 1990). In December 2006, the court committed respondent to an indeterminate term in the Illinois Department of Juvenile Justice (DJJ).

Respondent appeals, arguing (1) the failure to serve respondent's parents with the petition for adjudication of wardship deprived the circuit court of subject-matter jurisdiction and rendered probation-violation and commitment orders void and (2) the trial court erred by not considering respondent's best interests before committing him to DJJ.

The failure to serve respondent's parents did not deprive the trial court of subject-matter jurisdiction and only affected the court's personal jurisdiction over the respondent parents. Because the respondent father ultimately appeared

without objecting to personal jurisdiction, the issue was forfeited.  In addition, the record demonstrates the court did consider respondent's best interests when committing him to DJJ, but the preprinted commitment order must be amended to so reflect.  Therefore, we affirm as modified and remand with directions to correct the commitment order.

## I. BACKGROUND

On April 21, 2006, the State filed a petition for the adjudication of wardship of respondent.  The petition alleged that respondent was a delinquent minor because he committed forgery (720 ILCS 5/17-3(a)(2) (West 2006)) on April 20, 2006.  The petition named Linda C. as respondent mother and Ricky C. as respondent father.  The record indicates that Linda and Ricky are respondent's married, adoptive parents.  The petition contained the same address in Urbana for respondent, Linda, and Ricky.  The record contains no indication, however, that summonses were ever issued or served on Linda or Ricky.  However, an April 21, 2001, detention report indicated several unsuccessful attempts were made to contact respondent's parents by telephone.

Also on April 21, 2006, the trial court held the admonition hearing.  Respondent was present with appointed counsel, but neither of respondent's parents attended the hearing.  The court advised respondent of the contents of the petition, the possible penalties, and his rights to a trial.  Respon-

dent entered a general denial.  The court ordered respondent detained.

In May 2006, respondent admitted the allegations in the petition for adjudication of wardship.  The trial court declared respondent a delinquent minor and made respondent a ward of the court.  Neither of respondent's parents was present, but respondent was represented by appointed counsel.

In June 2006, the trial court held the sentencing hearing.  Again, neither of respondent's parents was present.  Respondent's appointed counsel requested probation, noting:

> "Your Honor, I would recommend that
> [respondent] be sentenced to a term of proba-
> tion.  I think it's pretty clear from the
> reports that [respondent] does not have a
> great deal of support at this time.  His
> parents are not here today, clearly."

The court ordered respondent committed to an indeterminate term in DJJ that would terminate in five years or upon respondent attaining the age of 21, whichever occurred first.

On August 7, 2006, the trial court held a review hearing.  Respondent's father, Ricky, appeared for the first time.  The court vacated respondent's order of commitment based on the July 21, 2006, DJJ institutional-adjustment report showing respondent had displayed good behavior and the proper attitude

- 3 -

while in DJJ. The court placed respondent on probation for 24 months.

On September 27, 2006, the State filed a petition to revoke probation alleging that respondent violated his probation by committing aggravated battery (720 ILCS 5/12-4(b)(3) (West 2006)). The State alleged that respondent struck an employee of CIRCLE Academy. The petition named Ricky and Linda as respondent's parents and listed the same address as contained in the petition for adjudication of wardship. The petition to revoke did not reflect whether a copy was mailed to respondent's parents.

Also on September 27, 2006, the trial court held the admonition hearing. Ricky appeared at the hearing and acknowledged in open court receiving a copy of the petition to revoke probation. The court admonished respondent of the allegations of the petition, his right to trial, and the possible penalties. The court found probable cause to believe respondent was a delinquent minor and that it was a matter of immediate and urgent necessity that respondent be detained.

On October 4 and October 11, the cause was continued at respondent's request. Ricky attended the October 4, 2006, hearing. On October 18, 2006, on respondent's motion and over the State's objection, the court released respondent to the custody of his father, although it appears from the record that

- 4 -

Ricky was not present at the hearing.  On November 13, 2006, with Ricky and appointed counsel present, respondent admitted the allegations contained in the petition to revoke probation.

On December 4, 2006, the State filed a supplemental petition to revoke alleging that respondent had again committed aggravated battery by pushing and throwing to the ground a CIRCLE Academy teacher (720 ILCS 5/12-4(b)(3) (West 2006)).  The petition does not reflect whether a copy was mailed to respondent's parents.  The December 4, 2006, detention report indicated that Ricky was advised by telephone that respondent had been taken into custody.  Neither Ricky nor Linda attended the admonition hearing on the supplemental petition to revoke held that same day.  The trial court ordered respondent detained.

On December 14, 2006, the trial court held the resentencing hearing.  Ricky attended the hearing.  The court granted the State's oral motion to withdraw and dismiss the supplemental petition to revoke, and the case proceeded to resentencing.

The State and defense counsel acknowledged receipt and review of the updated sentencing report prepared by the probation and court services department.  No inaccuracies were noted.  The sentencing report provided, in relevant part, as follows:

"The respondent minor has an eerie history in the juvenile justice system.  In

Champaign County case [No.] 2003-JD-68[,] which was eventually dismissed, the respondent minor had an outstanding warrant of apprehension for over two years before he was arrested on the warrant. In Champaign County case [No.] 2006-JD-38, the respondent minor was arrested a mere five hours after being placed on a community[-]based sentence. A new case was filed (Champaign County case [No.] 2006-JD-89) and the respondent minor was committed to the [DJJ]. However, that commitment was vacated and the respondent minor was given the opportunity of another community[-]based sentence. But a mere two mo[n]ths later, the respondent minor was once again arrested for striking a staff member of CIRCLE Academy in the face."

The sentencing report noted that respondent showed aggressive and threatening behavior toward staff at CIRCLE Academy and continued to "flout the directives" of the court. The report also noted that in November 2006, respondent was referred to Prairie Center for an assessment but that respondent called to reschedule.

Neither the State nor defense counsel presented any evidence. Respondent did not address the trial court, although

given the opportunity to do so. Ricky addressed the court. Ricky requested intensive probation for respondent and stated his desire to take respondent home. After hearing the recommendations of counsel, the court found respondent's parents unable, for reasons other than financial circumstances alone, to care for, protect, train, and discipline respondent, and found that the best interests of the public would not be served by placement "under section 5-7 of the Juvenile Court Act [of 1987]" (apparently referring to section 5-740). See 705 ILCS 405/5-750 (1)(a) (West 2006) (setting forth the standard for committing a minor to DJJ, including the requirement that the best interests of the minor and the public would not be served by placement under section 5-740); 705 ILCS 405/5-740 (West 2006) (providing for placement of the minor outside the home, such as placement with a relative, other person, or residential placement). The court ordered respondent committed to DJJ for an indeterminate term to terminate in five years or when respondent reaches the age of 21, whichever comes first, unless sooner discharged.

The trial court explained its ruling by noting that respondent had previously been given the opportunity to address his issues in the community through a community-based sentence but had failed to do so. The court acknowledged respondent's anger and feelings of hurt and abandonment related to his adoption. (The record indicates the adoption occurred approximately

- 7 -

11 years earlier but that respondent had recently begun having contact with his biological mother and her other children.) The court noted that despite efforts by respondent's family and school personnel to help respondent, respondent continued to display defiance and disregard those efforts.

The trial court concluded that based on respondent's conduct, respondent would likely not benefit from people trying to help him absent a confined setting. The court noted that in a confined setting, respondent would participate in the programs that would help him. The court admonished respondent that prior to filing a notice of appeal, he must either file a written motion asking the court to reconsider the sentence or seek leave to withdraw his admission to the petition to revoke probation.

On January 9, 2007, respondent filed a motion to reconsider asserting that the sentence was excessive. Following a hearing on February 2, 2007, at which Ricky appeared, the court denied the motion to reconsider. This appeal followed.

In August 2007, the office of the State Appellate Defender (OSAD) moved to withdraw pursuant to Anders v. California, 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967). This court denied the motion to withdraw and directed OSAD to file a brief addressing two issues: (1) whether the failure to serve respondent's parents implicated the trial court's subject-matter jurisdiction and rendered the court's orders void and (2)

- 8 -

whether the court considered respondent's best interests when committing him to DJJ where the preprinted commitment order failed to contain the statement that the court considered the minor's best interests. Respondent's counsel has now addressed those issues, and the State filed a response.

## II. ANALYSIS

### A. Failure To Serve Respondent's Parents Did Not Deprive the Trial Court of Subject-Matter Jurisdiction, and Respondent Forfeited Any Objection to the Failure To Serve His Parents

The Juvenile Court Act of 1987 (Act) requires a delinquency petition contain the name and residences of the minor's parents, guardian, and legal custodian. 705 ILCS 405/5-520(2)(c-), (2)(d) (West 2006). When a delinquency proceeding is commenced, a summons must be issued and served on the minor's parent, guardian, or legal custodian. See 705 ILCS 405/5-525 (West 2006). Sections 5-525(1)(a) and (4) of the Act provide, in relevant part, as follows:

> "(1) Service by summons.
>
> (a) Upon the commencement of a delinquency prosecution, the clerk of the court shall issue a summons with a copy of the petition attached. The summons shall be directed to the minor's parent, guardian[,] or legal custodian and

to each person named as a respondent in the petition, except that summons need not be directed (i) to a minor respondent under [eight] years of age for whom the court appoints a guardian ad litem if the guardian ad litem appears on behalf of the minor in any proceeding under this Act, or (ii) to a parent who does not reside with the minor, does not make regular child support payments to the minor, to the minor's other parent, or to the minor's legal guardian or custodian pursuant to a support order, and has not communicated with the minor on a regular basis.

* * *

(4) The appearance of the minor's parent, guardian[,] or legal custodian, or a person named as a respondent in a petition, in any proceeding under this Act shall constitute a waiver of service and submission to the jurisdiction of the court.  A copy of the

- 10 -

petition shall be provided to the person at the time of his or her appearance." 705 ILCS 405/5-525(1)(a), (4) (West 2006). See also In re Tyrone W., 326 Ill. App. 3d 1047, 1049, 762 N.E.2d 1159, 1161 (2002) (noting that "due process requires adequate notice of the proceedings to a minor and his parents").

In this case, although the petition for adjudication of wardship contained the name and address for respondent's parents, the record contains no indication that summons was ever issued or served on them. Respondent argues that the failure to strictly comply with the statutory provision requiring service of summons on respondent's parents deprived the trial court of subject-matter jurisdiction, thereby rendering the court's orders void.

### 1. The Evolution of Subject-Matter Jurisdiction in the Illinois Supreme Court

"[S]ubject[-]matter jurisdiction is the power of the court to adjudicate ***." In re L.E.J., 115 Ill. App. 3d 993, 997, 451 N.E.2d 289, 292 (1983). Any order rendered by a court lacking subject-matter jurisdiction is void and subject to attack at any time. In re John C.M., 382 Ill. App. 3d 553, 558, ____ N.E.2d ___, ____ (2008).

This court set forth a detailed analysis of subject-matter jurisdiction in John C.M., 382 Ill. App. 3d at 558-67, ___ N.E.2d at ___. To summarize, the Illinois Supreme Court, in a series of cases referred to as the Belleville Toyota cases,

- 11 -

recognized the effect the 1964 and 1970 amendments to the Illinois Constitution made to the power of court to exercise subject-matter jurisdiction.  See Steinbrecher v. Steinbrecher, 197 Ill. 2d 514, 529-31, 759 N.E.2d 509, 518-19 (2001) (rejecting the dissent's assertion that the circuit court's order was void for failure to comply with article 17 of the Code of Civil Procedure (735 ILCS 5/17-101 through 17-127 (West 1994)); Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 199 Ill. 2d 325, 340-41, 770 N.E.2d 177, 188 (2002) (rejecting the argument that the limitation period contained in the Motor Vehicle Franchise Act (815 ILCS 710/1 through 32 (West 2000)) was a jurisdictional, nonwaivable prerequisite to suit affecting the subject-matter jurisdiction of the circuit court); see also People ex rel. Graf v. Village of Lake Bluff, 206 Ill. 2d 541, 558, 795 N.E.2d 281, 290 (2003) (noting that once the trial court was presented with a petition and annexation ordinance, it had subject-matter jurisdiction to determine the matter).

Prior to that series of cases, the Illinois Supreme Court had held that when the legislature enacted legislation creating rights and duties not existing at common law, the legislature could limit the jurisdictional authority of the circuit courts.  See In re M.M., 156 Ill. 2d 53, 66, 619 N.E.2d 702, 710 (1993) (recognizing that a circuit court's jurisdiction is constitutionally derived but noting that a "legislature may

define the 'justiciable matter' in such way as to preclude or limit the authority of the circuit court"); In re A.H., 195 Ill. 2d 408, 416, 748 N.E.2d 183, 189 (2001) (noting that when the circuit court's power is controlled by statute, the court only has subject-matter jurisdiction as provided in the statute). Therefore, when a court acted outside the strictures of the statute, the court exceeded its statutory authority, and the resulting judgment was void. See, e.g., M.M., 156 Ill. 2d at 66, 619 N.E.2d at 710 (finding the court exceeded its jurisdiction under the Act when it limited, restricted, or conditioned the power of the guardian without specific statutory authority).

However, in the Belleville Toyota cases, the supreme court recognized that the 1964 and 1970 amendments to the Illinois Constitution vested the circuit courts with the authority to adjudicate all controversies and that the failure to follow the language of a statute did not divest a court of jurisdiction. See Steinbrecher, 197 Ill. 2d at 530, 759 N.E.2d at 519 (noting that pre-1964 circuit courts were powerless to act without statutory authority but that circuit courts are now courts of general jurisdiction); Belleville Toyota, 199 Ill. 2d at 335, 770 N.E.2d at 185 (holding that the legislature's creation of a new justiciable matter did not mean the legislature conferred jurisdiction on the circuit courts); Graf, 206 Ill. 2d at 554, 795 N.E.2d at 288 (holding that once the circuit court had a justi-

- 13 -

ciable matter before it, the court has the power to decide the issues whether "rightly or wrongly").

In Belleville Toyota, the Illinois Supreme Court made clear that, "except in the area of administrative review, the jurisdiction of the circuit court flows from the constitution." (Emphasis in original.) Belleville Toyota, 199 Ill. 2d at 335, 770 N.E.2d at 185; see also Ill. Const. 1970, art. VI, §9 (the circuit court "shall have original jurisdiction of all justiciable matters"). The Belleville Toyota court rejected the argument that the legislature could impose conditions precedent to the court's exercise of authority. Belleville Toyota, 199 Ill. 2d at 335-36, 770 N.E.2d at 185.

Courts continue, however, to have difficulty determining when a circuit court's failure to comply with the statutory requirements of a statutorily derived action divests the court of subject-matter jurisdiction. Some of this confusion stems from the Illinois Supreme Court's decisions subsequent to Belleville. For instance, in In re Jaime P., the supreme court held that the trial court must proceed within the strict confines of the Act and has no authority except as the Act specifically provides. In re Jaime P., 223 Ill. 2d 526, 540, 861 N.E.2d 958, 967 (2006) (holding that the juvenile court possessed no jurisdiction to continue probation beyond the juvenile's twenty-first birthday). In addition, the supreme court has repeatedly held that a sen-

- 14 -

tence that does not conform to a statutory requirement is void and a challenge can be raised at any time.  See People v. Harris, 203 Ill. 2d 111, 119, 784 N.E.2d 792, 797 (2003) (holding the case fell "into the narrow category of cases where a reviewing court on direct appeal has the inherent authority to correct a trial court order that is in error because of its failure to conform to a statutory requirement"); People v. Thompson, 209 Ill. 2d 19, 24, 805 N.E.2d 1200, 1203 (2004) (holding that "the extended-term sentence imposed on the order[-]of[-]protection conviction was unauthorized by statute and void" and could be attacked at any time); People v. Brown, 225 Ill. 2d 188, 203, 205, 866 N.E.2d 1163, 1172-73 (2007) (holding that a "sentence which exceeds statutory maximums or violates the constitution is void from its inception and subject to challenge at any time" but "void only to the extent that it exceeds what the law permits").

In the specific context of the failure to serve a necessary respondent (parent, guardian, or legal custodian) in a juvenile proceeding under the Act, cases subsequent to the Belleville Toyota trio of cases have taken two approaches.  Some courts have continued to hold that the failure to serve a necessary respondent in a juvenile proceedings fails to invoke the subject-matter jurisdiction of the court and renders the court's orders void.  See, e.g., Tyrone W., 326 Ill. App. 3d at 1050, 762 N.E.2d at 1162 (Second District) (involving a delinquency pro-

ceeding and essentially finding that the respondent minor's noncustodial father was not a "necessary respondent" by concluding that the issue was forfeited by failure to raise it in the trial court); In re Rodney T., 352 Ill. App. 3d 496, 502, 816 N.E.2d 741, 746 (2004) (First District) (termination of parental rights, finding noncustodial father whose whereabouts were unknown was not a necessary respondent); In re Dontrell H., 382 Ill. App. 3d 612, 616-18, 888 N.E.2d 627, 630-32 (2008) (First District) (finding that the circuit court's order requiring the board of education to pay the respondent's attorney fees in delinquency proceeding was not void for lack of subject-matter jurisdiction for failure to join the board as a party; the board was not a necessary party to the delinquency proceeding and a court may hear from an agency in such proceeding even where the agency was not made a party); In re Keyonne D., 376 Ill. App. 3d 1023, 1038-39, 878 N.E.2d 1138, 1150 (2007) (First District) (the failure to serve the supplemental petitions on respondent's noncustodial father whose address was known deprived the circuit court of jurisdiction and voided the delinquency probation proceedings); In re Willie W., 355 Ill. App. 3d 297, 300-01, 838 N.E.2d 5, 8 (2005) (Second District) (finding that the failure to notify the minor's father of the delinquency petition where the father's name was included in the petition, the minor's mother supplied the father's telephone number, and the father was paying

- 16 -

child support rendered court's judgment committing respondent to the DJJ void).

Other courts have held that inadequate service of process divests the court of personal jurisdiction, not subject-matter jurisdiction, which can be forfeited by a failure to object. See In re Antwan L., 368 Ill. App. 3d 1119, 1128, 859 N.E.2d 1085, 1093 (2006) (Second District) (in termination-of-parental-rights case, finding the failure to timely serve the respondent father by publication did not deprive the court of subject-matter jurisdiction and finding the father waived personal-jurisdiction issue by appearing without objecting); In re Darren M., 368 Ill. App. 3d 24, 35, 856 N.E.2d 624, 634 (2006) (First District) (finding respondent "forfeited the notice-to-the-noncustodial-father issue").

2. The Failure To Serve Respondent's Custodial Parents Affected Only Personal Jurisdiction, Not Subject-Matter Jurisdiction

The instant case differs from many of the cases cited above in that respondent's custodial parents were never served, whereas many of the reported cases on the issue involve the failure to serve a noncustodial parent. The issue here is whether the failure to serve a respondent's custodial parents as required by the Act deprived the trial court of subject-matter jurisdiction and rendered any orders by that court void. "Whether a judgment is void is a question of law [that] we review de novo." In re D.J., 361 Ill. App. 3d 116, 120, 836 N.E.2d 830,

- 17 -

834 (2005).

Respondent argues the conflict between the two seem-ingly different interpretations of subject-matter jurisdiction by the supreme court can be explained by the nature of the case. That is, relying on the approach taken by the Second District in In re Alex T., 375 Ill. App. 3d 758, 873 N.E.2d 1015 (2007), respondent argues the principle of statutorily limited jurisdic-tion applies in criminal cases and cases involving similar liberty interests, while the Belleville Toyota line of cases applies solely in civil proceedings. Respondent argues that the principle of statutorily limited jurisdiction applicable in criminal cases should also be applied in juvenile delinquency cases. If this court applies that principle, the trial court's orders would be void for the failure to serve respondent's parents.

In Alex, the appellate court held that statutory authority must exist for a court to enter an order that signifi-cantly restricts a person's liberty. Alex, 375 Ill. App. 3d at 763, 873 N.E.2d at 1019 (examining the provision of the Mental Health and Developmental Disabilities Code (405 ILCS 5/3-100 (West 2004)), which grants a circuit court jurisdiction over persons subject to involuntary admission who are not charged with a felony). While recognizing the holdings in the Belleville Toyota line of cases, the Alex court concluded that the supreme

court continued "to recognize the principle of statutory limitation of jurisdiction in criminal cases, particularly where the legality of a sentence is at issue." Alex, 375 Ill. App. 3d at 760, 873 N.E.2d at 1017. The Alex court extended this statutory-limitation principle to the involuntary-admission case because, like a criminal case, an involuntary-admission case can significantly restrict the liberty of a respondent. Alex, 375 Ill. App. 3d at 762, 873 N.E.2d at 1019. Respondent asks this court to extend the reasoning of Alex to juvenile delinquency cases because such cases are quasi-criminal and result in orders that restrict the liberty of a respondent.

This court agrees that while a delinquency proceeding under the Juvenile Court Act is not criminal in nature, juveniles are entitled to due-process safeguards afforded to defendants in criminal proceedings, such as adequate notice to the parties and proceedings that comport with "fundamental due[-]process requirements." In re S.R.H., 96 Ill. 2d 138, 144, 449 N.E.2d 129, 131-32 (1983); see also In re A.G., 195 Ill. 2d 313, 317, 746 N.E.2d 732, 735 (2001). This court disagrees, however, with the reasoning in Alex that civil and criminal cases should be treated differently with regard to subject-matter jurisdiction. The 1970 Illinois Constitution does not differentiate between civil and criminal subject-matter jurisdiction. See In re Gilberto G.-P.,

375 Ill. App. 3d 728, 731, 873 N.E.2d 534, 538 (2007) (finding the trial court did not have jurisdiction under the Act where the Act "exclude[d] certain criminal actions from prosecution under the Act").

Instead, Presiding Justice Grometer's special concurrence in Gilberto, 375 Ill. App. 3d at 732-34, 873 N.E.2d at 538-40, provides a more reasoned explanation of the supreme court's seemingly conflicting treatment of subject-matter jurisdiction. As noted by Justice Grometer, three potential jurisdictional issues exist in any case: "(1) personal jurisdiction--or, power over the individual; (2) subject[-]matter jurisdiction--or, the ability to entertain a particular type of case; and (3) the power to render a particular disposition." Gilberto, 375 Ill. App. 3d at 733, 873 N.E.2d at 539 (Grometer, P.J., specially concurring); see also People v. Davis, 156 Ill. 2d 149, 156, 619 N.E.2d 750, 754 (1993) (holding that "[s]ome authorities, including this court, have held that the power to render the particular judgment or sentence is as important an element of jurisdiction as is personal jurisdiction and subject[-]matter jurisdiction"). Justice Grometer reasoned that the third type of jurisdiction, the power to render a particular disposition, illustrates the principle that a "sentence in excess of the statutory maximum is void." Gilberto, 375 Ill. App. 3d at 733, 873 N.E.2d at 539

- 20 -

(Grometer, P.J., specially concurring).

Applying that third type of jurisdiction, Justice Grometer suggested that while the circuit court had personal and subject-matter jurisdiction, the court lacked the statutory authority to adjudicate the defendant delinquent. Gilberto, 375 Ill. App. 3d at 734, 873 N.E.2d at 540 (Grometer, P.J., specially concurring) (citing statute defining a "delinquent minor" as not including a minor who was at least 15 years old when he committed armed robbery with a firearm (705 ILCS 405/5-130(1)(a) (West 2002)). Justice Grometer noted:

> "The important distinction here is that the trial court did not incorrectly determine that defendant was a delinquent minor when it accepted his admission; rather, under no circumstances, given the statutory scheme, could the trial court make such an adjudica-tion. Simply, the circuit court did not have the 'power to render [the] judgment[].' Steinbrecher, 197 Ill. 2d at 532[, 759 N.E.2d at 520]." Gilberto, 375 Ill. App. 3d at 734, 873 N.E.2d at 540 (Grometer, P.J., specially concurring).
>
> This rationale explains the conflict between the

Belleville Toyota cases and the cases in criminal proceedings. In Belleville Toyota and Steinbrecher, the statutory provisions the trial court purportedly failed to comply with did not define the power to render a particular decision. In Belleville Toyota, 199 Ill. 2d at 340-41, 770 N.E.2d at 188, the supreme court rejected the argument that a limitation period in the statute was a prerequisite to jurisdiction. In Steinbrecher, 197 Ill. 2d at 529-31, 759 N.E.2d at 518-19, the supreme court rejected the dissent's assertion that the failure to comply with certain provisions of the statute--provisions requiring (1) the court to first ascertain the rights, titles, and interests of all parties to the action, (2) the appointed commissioner to take an oath, (3) the commissioners find that the property was not susceptible to division, (4) public sale of the property--rendered the circuit court's order void. Steinbrecher, 197 Ill. 2d at 538-542, 759 N.E.2d at 523-25 (Freeman, J., dissenting). See also Graf, 206 Ill. 2d at 554, 795 N.E.2d at 288 (holding that the trial court had subject-matter jurisdiction to decide the issue before it, "rightly or wrongly," once it was presented with a petition and an annexation ordinance).

In contrast, in Jaime P. and Alex, the statutory provisions defined the type of person for whom the trial court could make a particular disposition or to whom the statute

- 22 -

applied.  For instance, in Alex, 375 Ill. App. 3d at 763, 873 N.E.2d at 1019, section 3-100 of the Mental Health and Developmental Disabilities Code (405 ILCS 5/3-100 (West 2004)) affected the court's ability to render a particular disposition--involuntary admission of someone who was charged with a felony.  Similarly, in Jaime P., 223 Ill. 2d at 540, 861 N.E.2d at 967, the statutory provisions of the Act providing that proceedings terminate upon a minor attaining the age of 21 years affected the court's ability to render a particular disposition for persons beyond the age of 21, not the court's subject-matter jurisdiction.

To the contrary here, the failure to serve respondent's parents neither deprived the trial court of the power to hear juvenile-delinquency cases nor affected the court's authority to render a particular disposition.  The language of the Act does not provide that a delinquent minor is only one whose parents have been served with summons.  See, e.g., Jaime P., 223 Ill. 2d at 540, 861 N.E.2d at 966 (wherein the trial court lacked jurisdiction to continue probation beyond the date the minor turned 21 years of age).  In fact, the language contained in the statute presupposes the existence of a cause of action prior to service.  Section 5-525(1)(a) of the Act provides that "[u]pon the commencement of a delinquency prosecution," the summons shall issue.

705 ILCS 405/5-525(1)(a) (West 2006).  The failure to serve respondent's parents did not deprive the court of subject-matter jurisdiction or the authority to render a particular disposition. This conclusion is consistent with this court recent ruling in John C.M., 382 Ill. App. 3d at 569, _____ N.E.2d at __ (holding that "when the legislature sets time limitations in the Act and a circuit court fails to comply with those limitations, the judgment is not void, but the judgment is potentially voidable").

Instead, the failure to serve respondent's parents affected only the trial court's personal jurisdiction over them. As this court held in L.E.J.:

> "[S]ubject[-]matter jurisdiction is the power
> of the court to adjudicate; personal juris-
> diction is the ability to exercise that power
> as to particular individuals.  Lack of per-
> sonal jurisdiction does not deprive the court
> of subject[-]matter jurisdiction; only the
> ability to exercise its power upon those who
> have not been brought into court by summons
> or otherwise."  L.E.J., 115 Ill. App. 3d at
> 997, 451 N.E.2d at 292.

See also, e.g., In re C.S., 294 Ill. App. 3d 780, 786, 691 N.E.2d 161, 165 (1998) (providing that the failure to "proceed 'within

- 24 -

the strictures of the statute'" does not deprive a trial court of subject-matter jurisdiction; the court "simply proceeds in error because it lacked 'statutory authority'").

Here, the Act required service on respondent's parents. The failure to serve the parents was error. However, that failure neither prevented subject-matter jurisdiction from vesting in the trial court nor divested the court of its subject-matter jurisdiction. Instead, it raised an issue of personal jurisdiction. Personal jurisdiction can be forfeited if the party appears before the court without objecting to personal jurisdiction. See 705 ILCS 405/5-525(4) (West 2006) (providing that the appearance of a minor's parent constitutes a waiver of service and a submission to the jurisdiction of the court; also providing that a copy of the petition be provided to the parent when he or she appears).

In this case, Ricky waived service and submitted to the jurisdiction of the court by appearing before the court in August 2006 at the review hearing. The record also shows that Ricky was provided a copy of the petition to revoke probation when he appeared in September 2006.

Yet, the question of the failure to serve respondent's mother, with whom respondent and Ricky lived, remains. However, respondent has forfeited this issue by failing to raise the issue

before the trial court.

In *In re D.L.*, 299 Ill. App. 3d 269, 272, 701 N.E.2d 539, 542 (1998), this court extended the principle that a respondent minor forfeits the issue of lack of notice to a noncustodial parent by failing to raise it in the trial court to a situation involving a custodial parent. This court held:

> "[T]hat principle is even stronger in this
> situation, involving a custodial parent.
> When all the family members live together,
> those persons who were served have an even
> better opportunity to bring the issue to the
> trial court's attention at some point during
> the case." *D.L.*, 299 Ill. App. 3d at 272-73,
> 701 N.E.2d at 542.

Similarly here, the record indicates that respondent's parents were married and lived together. Ricky clearly had notice of the proceedings because he appeared. It is unlikely that respondent's mother would not also have known of the proceedings. Therefore, on this record, respondent forfeited the issue by failing to raise it in the trial court.

These facts--that respondent's parents lived together and his father appeared without objecting to personal jurisdiction--distinguish the case from *In re J.W.M.*, 123 Ill.

- 26 -

App. 3d 1036, 463 N.E.2d 1023 (1984). In J.W.M., the petition for adjudication of wardship listed the respondent minor's mother and father and their respective addresses. J.W.M., 123 Ill. App. 3d at 1037, 463 N.E.2d at 1024. Notice was not given to either parent, and only the mother was present at the adjudicatory and dispositional hearing. J.W.M., 123 Ill. App. 3d at 1037, 463 N.E.2d at 1024. This court noted that the respondent minor visited his father often and received spending money from him. J.W.M., 123 Ill. App. 3d at 1037, 463 N.E.2d at 1024. Without discussing either personal jurisdiction or subject-matter jurisdiction, this court concluded that the failure to give notice to the father required reversal of the delinquency adjudication. J.W.M., 123 Ill. App. 3d at 1037, 463 N.E.2d at 1024. In contrast here, although insofar as the record shows, neither parent was served, they lived together and Ricky appeared without objecting to a lack of personal jurisdiction.

### B. Record Demonstrates the Trial Court Considered Respondent's Best Interests Before Committing Respondent to DJJ

Respondent also argues the trial court erred by not considering respondent's best interests before committing him to DJJ. Respondent notes that the trial court, in both its oral statement and written commitment order, stated only that it was basing its commitment order on the best interests of the public.

At a sentencing hearing in a delinquency case, the

trial court must determine whether it is in the best interests of the minor and the public that the minor be made a ward of the court. 705 ILCS 405/5-705(1) (West 2006). If so, the court must determine the "proper disposition best serving the interests of the minor and the public." 705 ILCS 405/5-705(1) (West 2006).

In this case, the preprinted commitment order failed to contain the statement that the court considered the minor's best interests. See 705 ILCS 405/5-750(1)(a) (West 2006) (allowing commitment to DJJ where the trial court finds the minor's parent is unable, unfit, or unwilling to care for the minor and the best interests of the minor and public would not be served by placement outside the home). The preprinted order only provides that the "best interests of the public will not be served by placement" under section 5-740 of the Act. See 705 ILCS 405/5-740 (West 2006) (providing for placement of the minor outside the home, such as placement with a relative, other person, or residential placement).

Although commitment should be imposed only where a less-severe placement would not be in the minor's and the public's best interests, the trial court may consider a number of factors, including prior arrests, station adjustments or curfew violations, and the social-investigation report when determining whether commitment is necessary. See In re J.C., 163 Ill. App.

3d 877, 886, 516 N.E.2d 1326, 1332 (1987).  Moreover, the court need not use any specific words when making its determination. See, e.g., In re Fields, 46 Ill. App. 3d 1028, 1034, 361 N.E.2d 666, 670 (1977) (noting that "no particular type of statement is required" for the trial court to comply with the requirement that the court set forth the basis for selecting a particular disposition).

Although in this case the trial court did not specifically mention respondent's best interests in either the court's written or oral pronouncement, the record demonstrates the court did consider respondent's best interests.  See In re S.M., 229 Ill. App. 3d 764, 770, 594 N.E.2d 410, 414 (1992) (noting that the reviewing court can in some circumstances imply the trial court made the necessary findings based on evidence in the record).  Specifically, the trial court's comments reflect the court considered respondent's best interests.  The court noted that respondent had previously been given a community-based sentence but failed to take advantage of those opportunities. The court acknowledged respondent was dealing with anger, hurt, and feelings of abandonment related to his adoption many years earlier.  The court noted that respondent's recent conduct led the court to conclude that absent a confined setting, respondent would not participate in services or obtain any benefit from

services and those trying to help him.

A reasonable conclusion can be drawn from these comments that the trial court believed it was in respondent's best interests to be committed to DJJ and, in essence, be forced to take advantage of the programs and services in a confined setting. The court clearly sought to fashion a sentence that would meet both the public's and respondent's best interests--one that would help rehabilitate and educate respondent in becoming a functioning member of society while protecting the public from his actions. On this record, the court did consider respondent's best interests and found those interests best served by commitment to DJJ.

Because the trial court did consider respondent's best interests, the commitment order must be amended to so reflect. On remand, the trial court is directed to amend the commitment order to reflect that the best interests of the minor would not be served by placement under section 5-740 of the Act (705 ILCS 405/5-740 (West 2006)). The court is also advised to amend its preprinted commitment order to include the inadvertently omitted "best interests of the minor" language.

### III. CONCLUSION

For the reasons stated, we affirm as modified and remand with directions that the trial court amend the commitment

order to reflect that the best interests of the minor would not be served by placement under section 5-740 of the Act (705 ILCS 405/5-740 (West 2006)).

Affirmed as modified and remanded with directions.

KNECHT and COOK, JJ., concur.