In re SHAWN B. (The People of the State of Illinois, Petitioner-Appellee, v. Charles B. et al., Respondents-Appellants).

First District (3rd Division)   No. 1—89—3247

Opinion filed August 14, 1991.

*Justice White participated and concurred in this opinion prior to his retirement.

Patrick T. Murphy, Public Guardian, of Chicago, for appellant Shawn B.

John O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Paul Gliatta, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

The public guardian, on behalf of respondent Shawn B., appeals from an order of the circuit court of Cook County, juvenile division, which granted petitioner the People of the State of Illinois' (the State's) supplemental petition to vacate the Department of Children and Family Services' (DCFS') guardianship of Shawn B., terminate the court's wardship and close the case. On appeal, the public guard-

ian contends that (1) because Shawn B. was not served with summons and a copy of the supplemental petition, the juvenile court lacked jurisdiction to terminate its wardship, vacate DCFS' guardianship and close the case; and (2) the court's order to close Shawn B.'s case was not in his best interest. We affirm as modified.

Shawn B. was born on July 30, 1971. On December 16, 1986, when Shawn was 15 years of age, the State filed a "Petition for Adjudication of Wardship" in the interest of Shawn B. The court appointed an attorney and guardian *ad litem* to represent Shawn. Shawn's parents were present in court and represented by counsel. On that date, an order for temporary custody was entered which found that "(1) there is probable cause to believe that Shawn B. is a minor who is neglected; (2) it is a matter of urgent and immediate necessity that a temporary custodian of the person of the minor be appointed for the protection of the minor; and (3) reasonable efforts have been made to avoid removing the minor from the parental home." The order appointed DCFS as Shawn B.'s temporary guardian. Following the hearing, Shawn B. was placed in DCFS custody.

The court file reflects that the case was continued on two occasions, once in February and once in March of 1987. The next substantive hearing was held on April 30, 1987. Following that hearing, the court ordered Shawn B.'s placement in the Glen Mills School in Pennsylvania. The case was continued to October 19, 1987. On October 19, 1987, the court file indicates that the case was continued until January 20, 1988, for return of proof of service of process upon Shawn B. The State filed a copy of the summons on October 21, 1987. On January 20, 1988, the case was continued for trial on February 5, 1988. The court file does not indicate what, if any, parties were present in court on January 20, 1988. In addition, the record does not indicate if Shawn or his parents were ever actually served with notice of the February 5, 1988, hearing.

On February 5, 1988, a dispositional hearing was held. Following the hearing, the court found Shawn B. to be a neglected minor and ruled that it was in his best interest to be made a ward of the court. The court named DCFS as Shawn's legal guardian. The court's order provided for the continuation of the guardianship until Shawn B. reached the age of 21, unless otherwise ordered. Thereafter, the case was transferred to the guardianship calendar.

On October 13, 1989, DCFS filed a supplemental petition requesting that its guardianship of Shawn B. be terminated, the court's wardship vacated and the case closed. The hearing on the petition was set for October 27, 1989. A summons addressed to Shawn B. was

served upon Shawn B.'s mother at her home. The return of summons indicates that service was substituted by leaving a copy of the summons and complaint at the respondent's "usual place of abode." However, the remarks portion of the summons indicates that Shawn's mother told the process server that she was unaware of Shawn's whereabouts.

At the hearing held on October 27, 1989, Shawn's guardian *ad litem*, the public guardian, objected to the proceedings and stated that his client was not present and that his whereabouts were unknown. The public guardian informed the court that the last time that he had spoken with Shawn B. was in February of 1988. The court overruled the public guardian's objection and proceeded to trial.

Robert Brown, a DCFS child welfare specialist, testified that Shawn B. was placed in the Glen Mills School on May 22, 1987, and that he ran away from the school on September 1, 1988. Shawn B.'s next placement was with the Methodist Youth Services Program. Mr. Brown testified that Shawn B. stayed until January 24, 1989, and failed to obtain an appropriate job placement through the program. He further testified that Shawn ran away when he was terminated from Methodist Youth Services and the RESC program.

On May 2, 1989, Shawn turned himself in to DCFS and was placed in a shelter until he ran away on May 27. Shawn returned to the shelter on June 15 and remained until he ran away on June 17, 1989. From June 17 through July 1, 1989, Shawn remained on the streets. Thereafter, Shawn returned to DCFS and was placed in Herrick House, a DCFS group home. During this time period Shawn was accepted into the Austin Avenue Group Home. However, he ran away and remained at large from August 15 until October 4, 1989, when he turned himself in to the DCFS shelter, remained for two days and ran away again. On October 27, 1989, when the hearing on the State's supplemental petition to terminate guardianship and vacate wardship was conducted, Shawn's whereabouts were unknown.

Following the child welfare specialist's testimony, the court made the following findings:

> "Based on what I have heard that [*sic*] it is my position that the petition for supplemental relief is granted. When you contact him bring the case back into court. Guardianship is terminated, wardship is vacated and case closed."

This appeal followed.

On appeal the public guardian contends that because Shawn B. was not personally served with summons and a copy of the supplemental petition, the juvenile court lacked jurisdiction to vacate its

wardship, terminate DCFS' guardianship and close the case. We disagree.

Here, the public guardian is objecting to the trial court's jurisdiction to enter the order which granted the State's supplemental petition on September 27, 1989. The public guardian did not object to the court's February 5, 1988, order which found Shawn to be neglected, adjudicated him a ward of the court and appointed DCFS as his legal guardian. Thus, objection to the jurisdiction of the court to enter that order is waived. *In re L.M.* (1989), 189 Ill. App. 3d 392, 397, 545 N.E.2d 319, 323.

■ Jurisdiction of persons under the Juvenile Court Act of 1987 (Act) (Ill. Rev. Stat. 1989, ch. 37, par. 801—1 *et seq.*) is regulated by that statute and is one of the conditions precedent to the exercise of subject matter jurisdiction. (*In re L.E.J.* (1983), 115 Ill. App. 3d 993, 997, 451 N.E.2d 289, 292.) Subject matter jurisdiction is the power of the court to adjudicate; personal jurisdiction is the ability to exercise that power as to particular individuals. Lack of personal jurisdiction does not deprive the court of subject matter jurisdiction, only the ability to exercise its power upon those who have not been brought into court by summons or otherwise. (*In re L.E.J.*, 115 Ill. App. 3d at 997.) Lack of personal jurisdiction may yield a voidable order, but such an order is not void for lack of subject matter jurisdiction. *In re T.M.F.* (1987), 155 Ill. App. 3d 1026, 1029, 508 N.E.2d 1160, 1162.

Section 2—15 of the Juvenile Court Act of 1987 provides in pertinent part:

"Summons. (1) When a petition is filed, the clerk of the court shall issue a summons with a copy of the petition attached. The summons shall be directed to the minor's legal guardian or custodian and to each person named as a respondent in the petition, except that summons need not be directed to a minor respondent under 8 years of age for whom the court appoints a guardian ad litem if the guardian ad litem appears on behalf of the minor in any proceeding under this Act.

* * *

(5) Service of a summons and petition shall be made by: (a) leaving a copy thereof with the person summoned at least 3 days before the time stated therein for appearance; (b) leaving a copy at his usual place of abode with some person of the family, of the age of 10 years or upwards, and informing that person of the contents thereof, provided the officer or other person making service shall also send a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the

person summoned at his usual place of abode, at least 3 days before the time stated therein for appearance; or (c) leaving a copy thereof with the guardian or custodian of a minor, at least 3 days before the time stated therein for appearance.

\* \* \*

(7) The appearance of the minor's legal guardian or custodian, or a person named as a respondent in a petition, in any proceeding under this Act shall constitute a waiver of service of summons and submission to the jurisdiction of the court \* \* \*." Ill. Rev. Stat. 1989, ch. 37, par. 802—15.

■ Where a representative of the DCFS, which is the minor's legal guardian, appears and participates in the trial court proceedings, the legal guardian submits, through the appearance of the DCFS representative, to the jurisdiction of the court. (*In re J.L.S.* (1989), 188 Ill. App. 3d 815, 816, 544 N.E.2d 815, 816.) In addition, where a juvenile appears in court and participates in the proceedings, he waives the formality of service of process and voluntarily submits to the jurisdiction of the court. (*In re T.O.* (1989), 187 Ill. App. 3d 970, 973-74, 543 N.E.2d 969, 972.) Further, where a guardian *ad litem* is appointed and appears at the proceedings on behalf of a minor and the minor also appears in the initial hearing, although not at later hearings, no useful legal purpose is served by requiring further notice to the minor and remanding the matter for additional proceedings. *In re R.W.* (1988), 176 Ill. App. 3d 868, 874, 531 N.E.2d 924, 928.

■ In the instant case, the State attempted to inform Shawn B. of the hearing on the supplemental petition by serving him at his parents' address. However, Shawn B.'s mother informed the process server, who in turn noted on the summons return form, that Shawn B.'s whereabouts were unknown. Clearly, service of process upon Shawn B. at his parents' home was inappropriate because it was not his usual place of abode. (*United Bank v. Dohm* (1983), 115 Ill. App. 3d 286, 289-91, 450 N.E.2d 974, 976-78.) Section 2—16 of the Juvenile Court Act of 1987 provides that "if service cannot be made because the whereabouts of a respondent are unknown, service may be made by publication." (Ill. Rev. Stat. 1987, ch. 37, par. 802—16(2).) Since Shawn's whereabouts were unknown on October 20, 1989, when service of process was attempted, the State should have followed the provisions of the Act for service of summons by publication.

However, when the original petition for adjudication of wardship was filed on December 16, 1986, Shawn B. and his parents, as well as their respective attorneys, were present in court. At that time, Shawn B. submitted to the juvenile court's *in personam* jurisdiction. Further,

Shawn's guardian, DCFS, by and through its child welfare specialist, submitted to the court's jurisdiction by appearing and testifying at the hearing on the supplemental petition. The minor's guardian *ad litem* also appeared on his behalf.

In light of these facts, we find that the State's failure to serve Shawn notice by publication did not substantially prejudice his interests. We further find that Shawn submitted to the personal jurisdiction of the court both through his own appearance at the initial hearing in this matter and through his legal guardian's appearance at the hearing on the supplemental petition. We therefore conclude that the trial court's order is not void for lack of personal jurisdiction.

On the issue of subject matter jurisdiction, section 2—21 of the Juvenile Court Act provides:

"Findings and adjudication. (1) After hearing the evidence the court shall make and note in the minutes of the proceedings a finding of whether or not the minor is abused, neglected or dependant. If it finds that the minor is not such a person, the court shall order the petition dismissed and the minor discharged.

(2) If the court finds and notes in its findings that the minor is either abused or neglected or dependent, the court shall then set a time for a dispositional hearing to be conducted under Section 2—22 at which hearing the court shall determine whether it is in the best interests of the minor and the public that he be made a ward of the court." Ill. Rev. Stat. 1987, ch. 37, par. 802—21.

The Act requires the court to note in its findings whether the respondent is abused or neglected before proceeding to an adjudication of wardship and disposition. (*In re R.R.* (1987), 159 Ill. App. 3d 313, 319, 512 N.E.2d 1058, 1062.) The language of the Act clearly exhibits the legislative intent that only a finding of either abuse, neglect or dependency must be specifically noted or recorded in the trial court's findings. This finding is jurisdictional and without it the trial court lacks jurisdiction to proceed to an adjudication of wardship. (*In re R.R.*, 159 Ill. App. 3d at 319-20, 512 N.E.2d at 1062-63.) No other step under the Juvenile Court Act is jurisdictional. Moreover, once a minor is found to be either abused, neglected or dependent and placed in the custody of DCFS, the circuit court maintains jurisdiction over the case. *In re S.J.K.* (1986), 149 Ill. App. 3d 663, 670, 500 N.E.2d 1146, 1151; *In re Johnson* (1985), 134 Ill. App. 3d 365, 368-69, 480 N.E.2d 520, 524; Ill. Rev. Stat. 1987, ch. 37, pars. 802—24, 802—25, 802—26, 802—28.

■ It follows, therefore, that the court had and maintained jurisdiction over Shawn B.'s case at all times after February 5, 1988, when it entered an order finding him to be a neglected minor and making him a ward of the court. Once the court acquired jurisdiction to enter the dispositional order on February 5, 1988, it had jurisdiction to subsequently modify that order on October 27, 1989. We therefore conclude that the juvenile court possessed and properly exercised subject matter jurisdiction in this action.

The public guardian next contends that the trial court's order which terminated wardship, vacated guardianship and closed Shawn B.'s case was not in his best interest.

The Juvenile Court Act of 1987 provides in part:

"(1) The purpose of this Act is to secure for each minor subject hereto such care and guidance, preferably in his or her own home, as will serve the moral, emotional, mental, and physical welfare of the minor and the best interests of the community; *** and, when the minor is removed from his or her own family, to secure for him or her custody, care and discipline as nearly as possible equivalent to that which should be given by his or her parents ***.
***

(3) ***
***

(b) Every child has a right to services necessary to his or her proper development, including health, education and social services." (Ill. Rev. Stat. 1987, ch. 37, pars. 801—2(1), (3)(b).)

Juvenile proceedings are to be administered in a spirit of humane concern for the minor and to promote both the welfare of the minor and the best interest of the community. *In re W.W.* (1983), 97 Ill. 2d 53, 58, 454 N.E.2d 207, 210.

Section 2—31 of the Act provides:

"Duration of wardship and discharge of proceedings. (1) All proceedings under this Act in respect of any minor automatically terminate upon his attaining the age of 21 years.

(2) Whenever the court finds that the best interests of the minor and the public no longer require the wardship of the court, the court shall order the wardship terminated and all proceedings under this Act respecting that minor finally closed and discharged. The court may at the same time continue or terminate any custodianship or guardianship theretofore ordered but such termination must be made in compliance with Section 2—28." Ill. Rev. Stat. 1987, ch. 37, par. 802—31.

Section 2—28 provides in part:

"(3) *** In the event that the minor has attained 18 years of age and the guardian or custodian petitions the court for an order terminating his guardianship or custody, guardianship or custody shall terminate automatically 30 days after receipt of the petition unless the court orders otherwise." Ill. Rev. Stat. 1987, ch. 37, par. 2—28(3).

Here, following the testimony of the DCFS child welfare worker, the court made the following observations:

"Now the testimony that I have heard is that this child is not ready to become or to be let alone on his own independently. The child continues to come back to the care of DCFS. He is 18 years old. He can drive. He can vote. He can join the armed services."

The court then proceeded to terminate DCFS' guardianship, vacate its wardship and close the case. The court apparently based its decision on the fact that although Shawn, like most young people his age, was evidently ambivalent about his ability to survive independently, by virtue of his age, he possessed many if not most of the adult legal privileges. However, the court also stated, "[w]hen you contact him, bring the case back into court." By this statement, the court recognized the possibility that Shawn B. could, at some future date prior to his 21st birthday, require further care, protection or education and its dismissal of the case was therefore without prejudice.

■ There was no evidence in the record to indicate that Shawn B. possessed the skills and autonomy to successfully undertake independent living. On the contrary, the evidence demonstrates that DCFS' placement of Shawn in several different schools, programs and shelter care homes was unsuccessful. According to the DCFS child welfare specialist, Shawn failed to obtain either legitimate employment or a permanent residence. Thus, while Shawn at age 18 could vote, drive a car, and join the armed services, he was unable to find and hold steady employment or maintain a permanent residence. Unfortunately, Shawn is not alone. It has been reported that a statewide survey conducted by Bradley University in Peoria counted an estimated 11,700 homeless youths through age 17 on a single night in February 1989. The survey found 6,922 homeless youths in Chicago. Most were school age, but only three in five were attending classes. Jouzaitis, *After Day of Studies, A Homeless Night*, Chicago Tribune, May 5, 1991, §2, at 1.

Turning Shawn B. and other young people like him out to fend for themselves merely because they have reached the age of 18, without

ensuring that they are prepared to become useful and independent members of society, does an injustice to both the minor and society at large and fails to satisfy the court's statutory obligation to act in the best interest of the child. Under the circumstances, the court here should grant leave to file a petition for the reinstatement of the court's wardship and DCFS' guardianship if the petition is filed before Shawn B. reaches the age of 21.

Accordingly, the order of the circuit court is modified to allow the public guardian, on behalf of Shawn B., leave to petition the juvenile court for reinstatement of its wardship, and DCFS' guardianship, anytime prior to Shawn's 21st birthday. The order of the circuit court is affirmed as modified.

Affirmed as modified.

CERDA, P.J., and GREIMAN, J., concur.