512

*In re* R.K. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Martha Kennedy, a/k/a Martha Williams, Respondent-Appellant).

Third District   No. 3—92—0848

Opinion filed July 23, 1993.

Elaine Greek, of Peoria, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Nancy Rink Carter, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Susan K. Lucas, of Peoria, guardian *ad litem*.

JUSTICE BARRY delivered the opinion of the court:

Martha Kennedy, also known as Martha Williams (hereafter, Martha), appeals from an order of the circuit court of Peoria County terminating her parental rights as to four of five minor children on grounds of depravity.

In September of 1991 a second amended supplemental petition for the termination of parental rights was filed in this cause. Count I alleged that Martha is an unfit person as defined in section 1 of the Adoption Act (Ill. Rev. Stat. 1981, ch. 40, par. 1501(D)(i); 750 ILCS 50/1(D)(i) (West 1992)), in that she is depraved, having been convicted of 20 crimes: nine convictions for prostitution, eight for retail theft, one for felony theft, one for battery and one for forgery, all between April of 1980 and June of 1990. Count III of the petition alleged that Martha is an unfit person under section 1(D)(m) of the Adoption Act in that she has failed to make reasonable progress toward return of her minor children within 12 months of adjudications of unfitness entered in 1984 and 1986.

At the hearing on the termination petition, Martha's criminal record was introduced. She had been sentenced to the Department of Corrections in October of 1980, January of 1982, July of 1984, October of 1985, March of 1987, and June of 1990, in most cases with multiple sentences. In 1987, she committed felony retail theft while on mandatory supervised release, and in 1990 she committed felony retail theft and forgery while on probation for two prostitution convictions. She was in prison at the time of the termination on January 8, 1992.

R.K., then seven years old, and V.W., then six months old, were adjudicated dependent, and the Department of Children and Family Services (DCFS) was named guardian on September 4, 1984. J.W., Jr., was adjudicated dependent and DCFS named guardian on February 5, 1986, when he was one year old. All three were made wards of the court. R.K. and an older son not involved here were returned to Martha on November 26, 1986, but they were again removed from her

custody on December 19, 1986, when she was arrested and jailed for felony retail theft. J.W. was born in 1986 while she was in the Department of Corrections and was given by Martha to her mother to care for. S.K. was born in 1988 while Martha was in the Peoria County jail and was placed by the mother with a woman she had met in jail who was about to be discharged. Shortly after the petition for termination was filed and while Martha was in prison, DCFS filed a petition to have J.W. and S.K. declared neglected, and they were adjudicated to be dependent on October 9, 1991, and placed in the temporary custody of DCFS. However, they had not been made wards of the court prior to the termination hearing.

A caseworker with DCFS testified that prior to Martha's latest incarceration she was offered weekly visits with her children, that she missed about 90% of those visits, and although she was supposed to call when she was going to miss, she did so only about 50% of the time. During the first 18 months of her latest incarceration at Logan Correctional Center, Martha did not contact DCFS to arrange visits with the children. However, shortly after the original termination petition was filed, she did call and monthly visits were arranged for the seven months preceding the hearing. According to the caseworker, Martha always greeted the children warmly but did not interact with any of them except R.K. The younger children would play together while she visited with R.K.

Martha's testimony was that her criminal history was related to drug addiction, that she has now received counseling, attends therapy group meetings, has completed a 12-week substance abuse course, and has completed eight weeks of a 10-week motivation class. She stated that she made numerous attempts to get in touch with the DCFS caseworker after she entered the Logan Correctional Center but that the counselor who made the calls had trouble connecting with her caseworker. She also testified to various informal visits that she had with J.W. and S.K. while they were being cared for by others. She indicated that her goals are to get her GED, not to participate in any more criminal activities, to get her life straight, and to be reunited with her children when she is released from prison.

After hearing the evidence, the trial court entered its order declaring Martha to be an unfit person. A subsequent hearing was then held to determine the best interests of the minor children at which additional testimony was heard. At the close of the hearing, the trial court denied the request that Martha's parental rights be terminated, saying that he believed she had "turned the corner." However, upon the guardian *ad litem*'s motion to reconsider, the court determined

that it had wrongly focused on the mother rather than the best interest of the children and then entered the order terminating Martha's parental rights as to her four youngest children, all of whom are currently residing with foster parents who wish to adopt them. The fifth child named in the petition, 15-year-old R.K., is considered to be not adoptable, and upon recommendation of his caseworker and his guardian *ad litem*, Martha's parental rights were not terminated as to him and are not involved in this appeal.

Before this court Martha contends that, as to J.W. and S.K., the court lacked jurisdiction because they had never been made wards of the court and that the termination petition did not state a cause of action, and that, as to all four children, she was not proved unfit by clear and convincing evidence. We affirm the orders of the trial court.

Martha's first contention is that the trial court lacked jurisdiction to terminate her parental rights as to J.W. and S.K. because they were not wards of the court. Section 2—29 of the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1991, ch. 37, par. 802—29 (now 705 ILCS 405/2—29 (West 1992))) provides:

> "Adoption; appointment of guardian with power to consent. (1) A ward of the court under this Act, with the consent of the court, may be the subject of a petition for adoption under [the Adoption Act] ***.
>
> (2) If the petition prays and the court finds that it is in the best interest of the minor that a guardian of the person be appointed and authorized to consent to the adoption of the minor, the court with the consent of the parents, if living, or after finding, based upon clear and convincing evidence, that a nonconsenting parent is an unfit person as defined in Section 1 [of the Adoption Act], may empower the guardian of the person of the minor, in the order appointing him or her as such guardian, to appear in court where any proceedings for the adoption of the minor may at any time be pending and to consent to the adoption. *** An order so empowering the guardian to consent to adoption terminates parental rights ***."

The petition to terminate parental rights in this cause set forth grounds for determining that Martha is an unfit person under section 1 of the Adoption Act and then concluded with a prayer for an order terminating her parental rights and appointing a guardian of the minors with the power to consent to their adoption.

■ Martha argues that the circuit court, sitting in a juvenile proceeding, lacked subject matter jurisdiction to consider the petition as to S.K. and J.W. since they were not already wards of the court. She

cites section 2—21 of the Juvenile Court Act, which requires that the trial court find a minor to be either abused or neglected or dependent before proceeding to determine whether it is in the best interests of the minor and the public that he be made a ward of the court. A finding of abuse or neglect or dependency has been held to be jurisdictional and without it the trial court cannot proceed to an adjudication of wardship. (*In re Shawn B.* (1991), 218 Ill. App. 3d 374, 578 N.E.2d 269.) The court also stated, "No other step under the Juvenile Court Act is jurisdictional." (218 Ill. App. 3d at 380, 578 N.E.2d at 273.) Martha argues that a determination of wardship is similarly jurisdictional for termination of parental rights, but she cites no authority so holding. Although section 2—29 provides for a ward of the court to be subject to a petition for adoption, it does not preclude such petitions on behalf of children who are not wards, and the statute has never been so construed.

The adjudication of wardship took place here as a part of the termination proceeding, and we can see no reason to require a separate petition. Both S.K. and J.W. had been found to be dependent by court order dated October 9, 1991, and thus the jurisdictional requirement for the determination of wardship had been satisfied.

In the case of *In re E.P.* (1988), 167 Ill. App. 3d 534, 539-40, 521 N.E.2d 603, the court said:

"Moreover, the termination order itself was not defective for the court's failure to make the minors wards of the court or to specifically find it in the minors' best interests to appoint a guardian. Section 5—9 of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 705—9) does not state that a minor must be declared a ward of the court prior to the appointment of a guardian. In addition, the supreme court of Illinois has said the finding that a minor is in need of a guardian is tantamount to a finding of wardship. *In re Jennings* (1977), 68 Ill. 2d 125, 132-33, 368 N.E.2d 864, 868.

The court here expressly found respondent to be an unfit person and then found it was in the minors' best interests to terminate respondent's parental rights. The court's finding of unfitness, termination of parental rights and appointment of a guardian were sufficient to satisfy the requirement of adjudication of wardship."

We conclude that the circuit court here had subject matter jurisdiction of the termination petition.

■ Martha next contends that the termination petition failed to state a cause of action as to S.K. and J.W. because it did not allege

facts sufficient to bring them within the definition of neglected, abused, or dependent minors in sections 2—3 and 2—4 of the Juvenile Court Act. (Ill. Rev. Stat. 1991, ch. 37, pars. 802—3, 802—4 (now 705 ILCS 405/2—3, 405/2—4 (West 1992)).) Those sections set forth the requirements for a finding of neglect, abuse, or dependency. Since S.K. and J.W. were previously found dependent by the trial court and temporary custody given to DCFS, there would be no reason to require a new determination to be made in the termination proceeding. The petition here alleged that Martha was unfit and set forth the specific grounds which were the basis for that assertion. Thus the essential elements of the cause of action for termination were pleaded. See *In re B.K.* (1984), 121 Ill. App. 3d 662, 460 N.E.2d 43; *In re Rauch* (1977), 45 Ill. App. 3d 784, 359 N.E.2d 894.

The next assertion of error is that Martha's unfitness was not proved by clear and convincing evidence as required by section 2—29 of the Juvenile Court Act. She argues that her criminal record is only one factor to be considered and that there must be some allowance for an individual to become rehabilitated. (See *In re Sanders* (1979), 77 Ill. App. 3d 78, 395 N.E.2d 1228.) Her recent efforts at rehabilitation are described by her as evidence that she has made substantial progress, and the court's finding, later retracted upon rehearing, that she had "turned the corner" is said to indicate that the evidence was close rather than "clear and convincing."

■ A finding of unfitness as the basis for termination of parental rights must be supported by clear and convincing evidence but will not be reversed unless against the manifest weight of the evidence. (*In re A.H.* (1991), 215 Ill. App. 3d 522, 575 N.E.2d 261.) "Depravity" within the meaning of section 1(D)(i) of the Adoption Act (Ill. Rev. Stat. 1991, ch. 40, par. 1501(D)(i) (now, as amended, 750 ILCS 50/1(D)(i)) (West 1992)) has been held to be "an inherent deficiency of moral sense and rectitude." (*In re Abdullah* (1981), 85 Ill. 2d 300, 305, 423 N.E.2d 915, 917.) The evidence before the court here consisted of the 20 convictions previously described. This lengthy series of offenses demonstrated by clear and convincing evidence that Martha has been unable to cope with the norms of society in a lawful manner and that she is either unable or unwilling to conform to accepted morality. (See *In re Buttram* (1978), 56 Ill. App. 3d 950, 372 N.E.2d 1135.) Furthermore, Martha has had a number of opportunities to "turn her life around," yet each time she has been released from prison, she has resumed the same sort of criminal activity in which she previously engaged. Her continuing course of criminal conduct during the entire lifetimes of the four children at issue here is

more than sufficient to establish depravity within the meaning of the Adoption Act. Clearly the finding of unfitness by reason of depravity was not contrary to the manifest weight of the evidence.

Martha also contends that the finding that she failed to make reasonable progress toward the return of the minors was not established by clear and convincing evidence. Having held that the finding of unfitness by reason of depravity was supported by adequate evidence, we need not discuss this issue. *In re Buttram,* 56 Ill. App. 3d 950, 372 N.E.2d 1135.

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

McCUSKEY, P.J., and STOUDER, J., concur.