NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 210362-U

NO. 4-21-0362

IN THE APPELLATE COURT

FILED
October 19, 2021
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* Naz. D., Nar. D., Nak. D., Mal. R., Mar. R., Mil. R., and Mic. R., Minors, | ) ) | Appeal from the Circuit Court of |
| CHAMPAIGN COUNTY PUBLIC DEFENDER | ) | Champaign County |
| Guardian *ad litem*-Appellant, | ) | No. 20JA16 |
| v. | ) | |
| SHIRLETHA L., SHAMERE D., and MICHAEL R., | ) | Honorable |
| Respondents-Appellees. | ) ) | Matthew D. Lee, Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Knecht and Justice Holder White concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court affirmed, finding (1) the trial court sufficiently complied with
section 2-31(2) of the Juvenile Court Act of 1987 (705 ILCS 405/2-31(2) (West
2018)) and (2) the court's order closing the neglect case was not against the
manifest weight of the evidence.

¶ 2     The minors' appointed guardian *ad litem* (GAL) appeals from the trial court's

order terminating the wardship of the minors, returning guardianship to their mother, and closing

the case. The GAL contends (1) the court failed to comply with the requirements of section 2-

31(2) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-31(2) (West 2018)) or,

alternatively, (2) the court's order was against the manifest weight of the evidence. We affirm.

¶ 3                          I. BACKGROUND

¶ 4    On February 5, 2020, the State filed a petition for adjudication of wardship of Shirletha L.'s seven minor children—Naz. D. (born February 21, 2006), Nar. D. (born September 23, 2008), Nak. D. (born January 19, 2007), Mal. R. (born January 3, 2012), Mar. R. (born June 1, 2018), and Mil. R. and Mic. R. (born November 29, 2019). Shamere D. is the father of the oldest three minors; Michael R. is the father of the other four. The State alleged the minors were neglected pursuant to section 2-3(1)(b) of the Act (705 ILCS 405/2-3(1)(b) (West 2018)) because their environment, when residing with Shirletha L. and Michael R., exposed them to domestic violence and illegal activity. Following an adjudicatory hearing, the trial court entered a written order finding the minors neglected.

¶ 5    According to the dispositional report, the case was opened because of an incident between Shirletha L. and Michael R. that occurred in October 2019. Specifically, Shirletha L., while pregnant with Mil. R. and Mic. R., was at her house with her five children when Michael R. began "kicking the door in and kicking his way into the house" despite Shirletha L.'s repeated demands that he leave. Shirletha retrieved a firearm and fired a single shot in his direction in an attempt to prevent him from entering the house. She informed him that she had called the police and they were "en-route." Upon hearing this information, Michael R. "took off," but before doing so, "he fired 4 gun shots backwards towards the house." The dispositional report further indicated both Shamere D. and Michael R. were incarcerated. The minors had always lived with Shirletha L. There had been no safety concerns with her residence. Shirletha worked full-time in a dining hall on the University of Illinois campus. At the time the report was prepared, she was engaged in a 12-step domestic violence program. The report also indicated all the minors were healthy and the school-aged children were enrolled in school.

¶ 6    Following a hearing, the trial court entered a dispositional order adjudging the minors neglected, finding it in their best interest to be made wards of the court, and assigning guardianship to the Department of Children and Family Services (DCFS). The court found Shirletha L. fit, able, and willing to exercise custody of the minors and continuation of custody with her would not endanger the minors' health or safety. The court also found Shamere D. and Michael R. unfit due to their incarceration.

¶ 7    The trial court reviewed the case on three separate occasions, in November 2020, March 2021, and June 2021. The first permanency review report indicated the minors continued to live with Shirletha. Her house was in a "nice and quiet neighborhood" and there were no concerns with this placement. Shirletha continued to work full-time in the dining hall and consistently attended her domestic violence sessions. Naz. D. was a freshman in high school and was learning remotely due to the coronavirus pandemic. He was not "responding well to the distance learning model." He had "4 F's, 1 D-, a C-, and a C" and "numerous unexcused absences." No grade or attendance reports were obtained for the other children. The four oldest children were scheduled to begin individual counseling sessions. An uncle provided day care for the three youngest children. Following a hearing, the trial court entered an order continuing custody with Shirletha and guardianship with DCFS.

¶ 8    The second permanency report, filed in March 2021, indicated the minors continued to live with Shirletha and there remained no concerns with this placement. Shirletha completed her domestic violence services and was scheduled to complete a mental health evaluation. Shamere D. and Michael R. remained incarcerated. Naz. D.'s grades had "improved," but he had "numerous unexcused absences." Nak. D. also had a significant number of unexcused

absences. Following a hearing, the trial court entered an order continuing custody of the minors with Shirletha and guardianship with DCFS.

¶ 9 The third and final permanency report indicated the minors continued to live with their mother and there were no concerns with this placement. Shirletha remained cooperative with DCFS and she was not referred for treatment following completion of her mental health evaluation. Both fathers remained incarcerated. Naz. D. finished his freshman year with a grade point average of 0.87. Naz. D. again had a significant number of unexcused absences. He was enrolled in summer school "to recover the 3 credits needed to be on track" to advance to sophomore year. Nak. D., Nar. D., and Mal. R. finished the school year "functioning at grade level" and there were no concerns regarding their education. However, each of the three minors also had a significant number of unexcused absences. The report concluded by recommending the wardship be terminated, guardianship returned to Shirletha, and the case closed. The report noted she had completed all services and assisted her children in completing their services, and she had "been able to maintain the safety of the children in her care since case opening."

¶ 10 At the final permanency review hearing, the State and the GAL for the minor children recommended the court keep the case open and continue guardianship with DCFS due to the "alarming" number of unexcused absences for Naz. D., Nak. D., Nar. D., and Mal. R. Before announcing its decision, the court questioned the minors' caseworker about their attendance reports. The caseworker informed the court that Nak. D., Nar. D., and Mal. R. were "going onto [*sic*] the next grade" without the need for summer school. Naz. D., on the other hand, needed to enroll in summer school to obtain enough credits "to be eligible for sophomore status." Ultimately, the court declined the recommendations of the State and the GAL, finding as follows:

"THE COURT: Well, I've now considered the report as well as the ***

recommendations [of counsel] ***. [Shirletha L.], as far as I can tell you've

always been cooperative with [DCFS]. You've got the seven kids that you've

continued to have custody of during the pendency of the case, and I think the one

issue that the parties expressed concern about was this education.

From what I heard in terms of testimony I think that's sufficiently clarified

my concerns as it relates to the attendance reports. And the bottom line is this. If

the question is whether or not it's in the best interests of the children that custody

and guardianship be restored to you at this time based on your progress, based

upon the permanency hearings we've had in this case, I believe the answer is yes.

*** [A]s to Respondent Mother *** it is not—no longer necessary and

appropriate that the plan and goal, recognizing the right of the minors and the

least restrictive settings available, to keep custody or guardianship with [DCFS].

Guardianship will be restored to respondent mother, wardship of this court is

vacated, and guardianship of DCFS is vacated."

The trial court subsequently entered a written order terminating the wardship, returning

guardianship to Shirletha L., and closing the case.

¶ 11        This appeal followed.

¶ 12                                II. ANALYSIS

¶ 13        On appeal, the GAL argues (1) the trial court did not comply with section 2-31(2)

of the Act (705 ILCS 405/2-31(2) (West 2018)) when it entered its order terminating the

wardship and closing the case or, alternatively, (2) the court's order was against the manifest

weight of the evidence.

- 5 -

¶ 14                    A. Compliance With Section 2-31(2) of the Act

¶ 15          First, the GAL contends that in terminating the wardship and closing the case, the

trial court failed to comply with the requirements of section 2-31(2). Specifically, the GAL

argues the court failed to make—in either its written order or oral pronouncements—factual

findings that the "health, safety, and the best interests of the minors and the public no longer

require the wardship." *Id.* The State, citing to *In re M.G.*, 2018 IL App (3d) 170591, 94 N.E.3d

1287, maintains the court sufficiently complied with the statute.

¶ 16          Section 2-31(2) of the Act provides, in relevant part:

            "Whenever the court determines, and makes written factual

            findings, that health, safety, and the best interests of the minor and

            the public no longer require the wardship of the court, the court

            shall order the wardship terminated and all proceedings under this

            Act respecting that minor finally closed and discharged." 705 ILCS

            405/2-31(2) (West 2018).

A purported discharge of a case in violation of section 2-31(2) is ineffectual. *In re Aaron R.*, 387

Ill. App. 3d, 1130, 1139, 920 N.E.2d 171, 178 (2009). Whether the trial court complied with

applicable statutory requirements is a question of law reviewed *de novo*. See, *e.g.*, *Aaron R.*, 387

Ill. App. 3d at 1138.

¶ 17          In *M.G.*, the appellant argued the trial court's order terminating the wardship and

closing the case did not comply with section 2-31(2) because it "failed to specifically explain

how it was in the best interest of the minors to terminate the wardship." *M.G.*, 2018 IL App (3d)

170591, ¶ 19. The Third District disagreed, concluding the trial court's written order finding the

father fit and its explicit oral ruling that it was not in the minors' best interest to remain wards of

the court were sufficient to comply with section 2-31(2). *Id.* ¶ 21. The *M.G.* court noted that the trial court, in making its best-interest determination, had relied not only on the testimony in court but also on the permanency review report, which "indicated that the father had been restored to fitness and remained fit, had successfully obtained appropriate housing for himself and the minors, had complied with and completed all objectives, and had successfully corrected the conditions that led to DCFS involvement." *Id.*

¶ 18          Here, the trial court entered a written order terminating the wardship, vacating the guardianship, and closing the case. As part of its order, the court found that "consistent with the health, welfare and safety of the minors as well as the best interest *** of the minors[,]" placement with the mother was appropriate. The court made an explicit oral ruling that it was in the minors' best interest to restore guardianship to the mother and terminate the wardship. In so ruling, the court relied on the testimony in court and on the permanency review reports. The permanency reports indicated the minors had remained in their mother's custody throughout the case and there were "no concerns regarding housing or safety." The report also indicated the minors were healthy, the mother had "engaged in and completed all services contained within her service plan[,]" and she had "assisted her children with engaging in and completing their recommended service items as well." We find this was sufficient to comply with the requirements of section 2-31(2) of the Act. See *id.*

¶ 19                    B. The Trial Court's Order Terminating the Wardship

¶ 20          In the alternative, the GAL argues the trial court erred in finding it was in the minors' best interest to terminate the wardship, return guardianship to the mother, and close the case. The GAL highlights the minors' poor attendance at school and the fact that their grades "suggest room for considerable improvement."

¶ 21         We review the decision to terminate wardship and close a case under a manifest weight of the evidence standard. *In re Aaron L.*, 2013 IL App (1st) 122808, ¶ 28, 988 N.E.2d 688. A decision is against the manifest weight of the evidence where it is "unreasonable, arbitrary and not based on the evidence, or when the opposite conclusion is clearly evident from the record." (Internal quotation marks omitted.) *Id.*

¶ 22         Here, we cannot say the trial court's decision to terminate the wardship and close the case was arbitrary or not based on the evidence. The evidence shows that the minors remained in the custody of their mother for the duration of the case. The house was in a "nice and quiet neighborhood[,]" and there were "no concerns regarding housing or safety." The mother completed all of the services in her service plan and ensured the minors did the same. The evidence also shows that the minors were healthy. Although there were some concerns about the minors' attendance at school, all of the children, except Naz. D., "were on track" and "going onto [*sic*] the next grade." As for the concerns regarding Naz. D., the minors' caseworker testified that he would be able to earn the necessary credits by attending summer school. According to the permanency report, Naz. D. would be "participating in summer school to recover the *** credits needed to be on track." In light of the above, we conclude the court's decision was not against the manifest weight of the evidence.

¶ 23                         III. CONCLUSION

¶ 24         For the reasons stated, we affirm the trial court's judgment.

¶ 25         Affirmed.